### 5547.   WESTERN & ATLANTIC RAILROAD CO. *v.* SELLERS.

1. The instructions as to which complaint was made submitted to the jury the question whether the operation of the switch-engine at a rate of speed less than six miles an hour was negligence or not, whereas the lowest rate of speed which the pleadings authorized to be considered as negligence was a speed greater than six miles an hour.

(*a*) When instructions not authorized by the pleadings are given, it is to be presumed that the complaining party was injured, because it must be assumed that he relied upon the fact that the issues would be confined to the statements of the pleadings. A verdict must be construed in the light of the pleadings as well as of the evidence adduced, and a

verdict resting solely upon or probably induced by evidence not authorized by the pleadings is not authorized by law; and when it is as probable that a verdict was based upon evidence not authorized by the pleadings as upon evidence in conformity with the contentions of the prevailing party as presented in his pleadings, an instruction which permits the jury to consider evidence not sustaining the issues submitted in the written pleadings, and consequently which authorizes a finding based solely on such evidence, is error requiring the grant of a new trial.

(b) The harmful effect of such an erroneous instruction can not be obviated merely by a correct instruction upon the same subject; the attention of the jury must be specifically called to the previous error, and it must be expressly and explicitly withdrawn.

2. The earning capacity of one who has been injured may be illustrated by proof as to the amount of compensation he was receiving at the time of the injury. Value is a matter of opinion, and may be proved by circumstances. The circumstance that a particular person, at the time of an injury was receiving a certain sum as monthly compensation for his services, while not conclusive as to the real value of the services, is some evidence as to what they were worth, and may properly be considered by a jury. Under some evidence in the record, the instruction to the effect that the plaintiff would be entitled to recover the value of any services he may have lost, although his employers may have given him his wages during the time he did not work, was authorized, under the ruling of the Supreme Court in *Nashville &c. Ry.* v. *Miller,* 120 *Ga.* 453 (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210).

3. There was evidence which authorized the court's instruction on the subject of permanent disfigurement of the plaintiff's thumb.

4. Except as pointed out in the first headnote, the trial was free from error.

DECIDED NOVEMBER 17, 1914.

Action for damages; from city court of Atlanta—Judge H. M. Reid. January 17, 1914.

*Tye, Peeples & Jordan,* for plaintiff in error.

*Brown, Randolph, Parker & Scott, Spencer R. Atkinson,* contra.

RUSSELL, C. J. Sellers recovered a verdict against the Western & Atlantic Railroad Company for $2,000 as damages for personal injuries. The defendant excepts to the judgment overruling its motion for new trial. Briefly stated, the plaintiff's petition alleged that he went to what is known as the North avenue crossing of the defendant's railroad in the city of Atlanta, for the purpose of meeting his wife and children, whom he expected to alight from a train known as the Rome express. He alleged that this crossing was a regular stopping place for the discharge of passengers who wished to be discharged there; that upon the occasion in question the Rome express did stop at this North avenue crossing, and his wife and children alighted; and that, while he was crossing an intervening

track of the defendant's railroad to meet them, he was run down by a switch-engine, which approached the crossing and crossed it without giving a signal of its approach. It was stated in the petition that the plaintiff had previously informed the defendant's watchman at that crossing that his wife and children were on the Rome express, and that he expected the train to stop at the North avenue crossing, but it was not alleged that the defendant was negligent in respect to the conduct of this watchman. The plaintiff set out an ordinance of the City of Atlanta, forbidding any person in charge of an engine to operate it at a greater rate of speed than six miles an hour, and specified the following acts of negligence as the cause of his injury: (1) running the switch-engine over North avenue crossing at a greater rate of speed than that permitted by the city ordinance; (2) running the switch-engine over a public crossing in a populous city at a high and reckless rate of speed, to wit: 15 or 20 miles an hour; (3) running the switch-engine at the said reckless rate of speed over the said crossing, which was a regular stopping place for passengers on the Rome express to alight from the train; (4) running the switch-engine over the said crossing at the said rate of speed when the defendant knew or ought to have known that the plaintiff was there for the purpose of meeting his wife and children; and (5) running the switch-engine over the said crossing at the speed and under the conditions aforesaid without ringing the bell, blowing the whistle, or giving other warning of its approach. Two amendments to the petition amplified the description of the alleged injuries, and more specifically set forth the respects in which the plaintiff's capacity to labor had been diminished, and also itemized his expenditures for medicine and medical services.

On the trial it was admitted that it was the defendant's custom to discharge passengers at the North avenue crossing whenever they wished to alight from the train at that point, and it was clearly shown that the plaintiff was struck by the defendant's switch-engine moving in an opposite direction from the Rome express, which on the occasion in question stopped to discharge passengers, including the plaintiff's wife and children. The plaintiff testified that the engine went by "like a flash"; and, from his statement that he heard no signal, the jury were authorized to infer that no whistle was blown nor bell rung. The testimony is in conflict as to whether

the plaintiff ran into the switch-engine or the switch-engine ran into him, but the finding of the jury concluded that issue in his favor.

The defendant's motion for a new trial contains, in addition to the general grounds, certain exceptions in which complaint is made that the court, in charging the jury, submitted to them acts of negligence not alleged in the petition, and in giving certain instructions which were not supported by the evidence, though pertinent to the pleadings; and that the court instructed the jury that the plaintiff, if damaged, might recover the amount for lost time covered by his wages although his employers may have given him his wages during that period. The decision in this case depends upon whether the trial judge was authorized by the pleadings and the evidence to instruct the jury as follows, with reference to the running of the engine by which the plaintiff alleged he was injured: "If it was not going at a greater rate of speed than six miles per hour, that would not be, as a matter of law, negligence. The question of speed would then be left for you, to say as matter of fact (in view of all the circumstances and facts in the case, the situation, the surroundings, the time and place) whether the speed at which the engine was going, whatever you determine that to be, was negligence or not. But if it was going, as I said, at a speed greater than six miles per hour, that would be negligence under the law. But if not, it would be left to you, as a matter of fact, for you to say, in view of all the facts relating to the occurrence, time, place, situation and surroundings, whether the rate of speed was negligent or not." In this connection it is insisted that the court erred in immediately following the charge which we have just quoted with the following instruction: "And you would determine it just this way: You will take into consideration all the evidence that will illustrate it to your minds,—what time it occurred, what actual rate of speed the engine was going, what was the situation, the place, why Mr. Sellers was there, what notice to the defendant, if any it had, of the purpose of his being there—all about the situation,—and then for yourselves say whether the defendant was negligent or not, in so far as these particulars are concerned."

From a careful review of the record, we are convinced that there is evidence to have authorized the recovery awarded to the plaintiff, based upon the proposition that the North avenue crossing

was, for the time being, a quasi-depot of the defendant, or at least a place at which it was engaged in the discharge of passengers; and that if the pleadings had conformed to the evidence, the jury could very properly have adjudged it to be negligence for the defendant to allow a switch-engine to be run at all between the debarking passengers and any person engaged in meeting them. Under the evidence, it would have been for the jury to say, under the principles stated by the court, whether it was negligence on the part of the carrier to allow a train to be run under the peculiar circumstances. Negligence is always to be determined with reference to the peculiar circumstances at a time and place where the exercise of care and diligence is required. But the insistence that the charge was not warranted by the allegations of the petition or the charges of negligence specified seems to be well sustained.

1. It will be noted, in each of the specifications of negligence which we have quoted, that the negligence is alleged to consist of the running of the switch-engine at a rate of speed greater than fifteen miles per hour, except in that specification in which it is alleged that the train was running at a rate of speed greater than the six miles per hour prescribed by the municipal ordinance. There is no allegation that even though the train was running at a rate of speed less than six miles per hour, the operation of the train at the particular time and place was nevertheless negligence, in view of the surroundings and the fact that a passenger-train had been stopped in order to discharge passengers. For that reason, while it would have been true, as stated by the trial judge, that the jury would be authorized to take into consideration all of the facts relating to the occurrence, the time, place, situation, and surroundings, in determining whether the rate of speed was negligent or not, if there had been an allegation which could have been construed as charging that the operation of the switch-engine under the circumstances was negligent without regard to its speed, still, as already stated, all the charges of negligence, save one, refer back to a rate of speed greater than fifteen miles an hour, and that one to a rate of speed exceeding six miles. The charge of which complaint is made submitted to the consideration of the jury the question whether a less rate of speed than six miles an hour was negligent or not, whereas the lowest rate of speed which the pleadings authorized to be considered as negligence was a speed greater than six miles an hour; and in consequence the instruction violated the

well-settled rule that instructions not authorized by the pleadings should not be given. When such instructions are given, the complaining party is presumably injured, because he must be assumed to have relied with confidence upon the fact that the issues would be confined to the statements of the pleadings. We are reluctant to set aside a verdict which is supported by evidence, but the rule is well fixed that the verdict must be construed in the light of the pleadings as well as of the evidence, and that a verdict which either rests solely upon evidence not authorized by the pleadings or probably may have been induced by this evidence is not authorized by law; and for this reason we are constrained to reverse the judgment refusing a new trial, although the petition might have been amended upon the trial in conformity with evidence which would have sustained the verdict. It may be said that the verdict is supported by the evidence of the plaintiff, that the engine went by like a flash, and that therefore the court's reference to the operation of the engine at a speed less than six miles an hour was harmless, but in this view we lose sight of the fact that the court can not tell upon what particular evidence the jury based its verdict. It is equally probable that the jury may have believed the witnesses for the defendant who testified that the engine was operated at a rate of speed less than six miles an hour, and that in accordance with the instructions of the court upon this evidence the jury adjudged the running of the engine at the particular time and place when the defendant was discharging passengers to be such negligence as entitled the plaintiff to recover, although the plaintiff himself in his petition had not made any such contention. It is true also that the trial judge very emphatically and properly told the jury that the plaintiff could only recover upon the specifications of negligence expressly set forth in his petition, and that unless the jury were satisfied that he was entitled to recover upon these specifications or some one of them, they should find for the defendant. However, it has frequently been held, both by the Supreme Court and this court, that the harmful effect of an erroneous instruction can not be obviated merely by a correct instruction upon the same subject, but that the attention of the jury must be specifically called to the erroneous instruction, and it must be explicitly and expressly withdrawn. As pointed out by Mr. Justice Lamar in *Savannah Railway Co.* v. *Hatcher,* 118 *Ga.* 273 (45 S. E. 239), "The

jury must take the whole charge as the law, and it is not for them to select one part to the exclusion of another, nor to decide whether one part cures or qualifies another, without being instructed so to do by the judge." In *Americus &c. R. Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105), the Supreme Court points out how such an error should be cured.

2. Complaint is made that the court charged the jury as follows: "If he (plaintiff) lost time from his work, due to the injury, and the evidence shows you what he would have made during the period of the loss of time, that sum should be awarded in his favor, and that would be true although it was also true that his employers gave him his wages during that period. If he actually lost time and the evidence shows you what he would have made during the period of lost time, he would be entitled to recover that, if entitled to recover, although his employers may have given him his wages during that period. His damages would not be reduced by the fact that his employers gave him his wages during the time that he did not work, if that is true." We construe this instruction as not being in conflict with the rule announced in *N., C. & St. L. Ry. Co.* v. *Miller,* 120 *Ga.* 453 (47 S. E. 959, 67 L. R. A. 87, 1 Ann. Cas. 210), for the court very cautiously used the word "gave" in speaking of the amount, if any, which the plaintiff received from his employers during his lost time, and, as ruled in that case, "The fact that a person other than the wrong-doer, as a mere gratuity, pays to one injured as a result of his negligence a sum of money equal to the amount he would have earned had he been able to work during the period of disability will not mitigate the damages due by the wrong-doer for lost time." It was further held that the rule was not affected by the fact that the person who makes the payment is the employer of the injured party. This being true, the trial judge in the present case properly permitted the jury to take into consideration the salary which the plaintiff received when he was able to work in measuring the plaintiff's earning capacity for the purpose of arriving at the amount of his damages, if any. As stated by the judge, if the plaintiff actually lost time and the evidence showed what he would have made during the period of lost time, he might recover that amount, if he was entitled to recover at all; and his damages would not be reduced by the fact that his employers gave him his wages during the time he was not at

work. In this connection see *Meigs* v. *Western & Atlantic Railroad Co.,* 74 *Ga.* 857. The plaintiff in error insists that the sums paid to the plaintiff were paid as wages, and that there was no evidence as to what was the value of the plaintiff's lost time. In the absence of any direct statement that the sums paid to the plaintiff were paid as wages, and in view of the uncontradicted evidence that he was totally incapacitated to labor during a part of the time when his employers gave him his wages, coupled with the further fact that his employers were under no legal obligation to pay him when he was unable to perform and was not performing any services, we are of the opinion that the jury were authorized to conclude that the payments were in fact gifts, though not so denominated. The plaintiff in error further insists that the amount paid the plaintiff is not a proper criterion by which to measure the value of the plaintiff's time, in the absence of any direct evidence as to the real value of his lost time. In our opinion, there is evidence as to the value of the plaintiff's time; but even conceding that there were no other evidence on this point, what a person is paid when at work is some evidence as to what his services are worth,—it is at least circumstantial evidence illustrative of value and affords a basis for computation. *Southwestern R. Co.* v. *Vellines,* 14 *Ga. App.* 674 (82 S. E. 166-171).

3. The evidence appears to us to authorize the instruction of the court to the effect that if the jury believed that the plaintiff's thumb was permanently stiffened so far as to constitute disfigurement, they might take that into consideration in passing on the amount of damages. His main business was the correction and collection of accounts, and the writing of receipts for payments made to him. He testified that his thumb was so stiff that he could not bend the second joint, and that he could write only by putting his pen or pencil, as the case might be, in the crotch of his hand. This unusual use of the pencil would naturally call attention to the stiffness of the thumb, and thereby as much humiliate the plaintiff as if the fact that he was maimed were evidenced in some other way. Furthermore, it is plain, from the course of the examination, that the court and jury saw the plaintiff's thumb, and for that reason we could not hold that there was not such an evident appearance of disfigurement as to justify the court's use of that word; which, to say the most of it, is obviously merely casual.

4. Except in the fact that the allegations of the plaintiff's petition and the specifications of negligence did not authorize the instruction of the court in regard to the operation of the engine at a lower rate of speed than six miles per hour, the trial was free from error, and upon the third and fourth grounds of the motion for a new trial alone the judgment is reversed.

*Judgment reversed. Broyles, J., not presiding.*