25251. ABELMAN *et al. v.* ORMOND *et al.*

754

Decided July 11, 1936.

*Irving S. Nathan,* for plaintiffs in error.
*Houston White, Edwin Pearce,* contra.

MacIntyre, J.  Helen Ormond through her next friend, L. L. Ormond, instituted suit against Manuel Rosenthal, Samuel Finn, and Manuel Abelman for personal injuries.  The substance of the petition was that Samuel Finn and Manuel Abelman were operating, as partners, a dry-cleaning business in which they employed Manuel Rosenthal to operate a delivery truck in soliciting and delivering dry-cleaning; that on a certain day, while in the prosecution of their business and while acting within the scope of his employment, Manuel Rosenthal drove said truck against the plaintiff, causing her named injuries, and that he was negligent in various specified ways in the operation of the truck at the time of the injury.  L. L. Ormond, as father of Helen Ormond, also brought suit against the defendants for sums expended by him for her treatment, and for loss of her services.  The two cases were by consent tried together.  Manuel Rosenthal filed a separate answer from that of the other two defendants, both denying the material allegations of the petition.  The trial resulted in a ver-

dict in favor of the plaintiff. Finn and Abelman filed a motion for new trial, which was overruled, and they excepted.

■ The judge charged the jury, on the subject of damages to be awarded to the plaintiff, in part as follows: "You would give to the plaintiff, if she recovers, just such sum as you think would be fair compensation for the pain and suffering she has endured and will endure, and for any impairment, if any, to her bodily or mental health and vigor, and for any disfigurement or injury received on this occasion, provided you believe there was such and you believe she is entitled to recover." The assignment of error on this charge is that "there was no evidence to show that the plaintiff was in fact permanently disfigured or deformed." The charge, as set out above, did not refer to any permanent disfigurement or deformity, but only instructed the jury that they might compensate the plaintiff in damages for disfigurement or injury, if any, if they thought her otherwise entitled to recover. With reference to disfigurement, Helen Ormond testified: "That is the injury right where it is cut to my ankle bone; that is the scar from that accident; and I was hurt on my head back here, right there" (indicating). Her mother testified: "She has a large scar on her ankle, and a scar below her knee, and a scar above her knee, and a little scar on her elbow. The scar was about that long above her knee [indicating], about three inches I would say, on the outside of her leg." This evidence clearly shows that the plaintiff sustained injuries which left scars on her body. Furthermore, it is plain that during the course of the examination of the plaintiff the court and jury saw the scars on the child; and for that reason alone we could not hold that there was not such an evident appearance of "disfigurement" as to justify the court's use of the word, "which, to say the most of it, is obviously merely casual." *Western & Atlantic R. Co. v. Sellers*, 15 *Ga. App.* 369 (3) (83 S. E. 445). Our courts have upheld the right of one injured to recover for mental pain and suffering consequent on disfigurement. See *Western & Atlantic R. Co. v. Sellers*, supra; *Georgia Southern & Fla. Ry. Co. v. Wright*, 130 *Ga.* 696 (61 S. E. 718); *Betts Co. v. Hancock*, 139 *Ga.* 198 (77 S. E. 77). As we have pointed out, there was evidence that the plaintiff was disfigured; and the assignment of error, being based on the assertion that there was no such evidence, we think it is without merit.

■ The court charged the jury as follows: "I call your attention to this further legal rule: If you believe from the evidence that the child was guilty of some negligence but was less negligent than the defendants or either of them, if you believe there was negligence on the part of the defendant or either of them, and the plaintiff could not by the use of due care, as I have called to your attention, have avoided the consequences to herself of defendant's negligence, if there was such, then the negligence on the part of the plaintiff, the child, would not prevent a recovery in this case, provided the plaintiff is otherwise entitled to recover; but the amount of recovery, if any, should be reduced to such an amount as would be proportionate to the amount of fault attributable to the plaintiff, who is a child." The assignment of error is as follows: "This charge was error, . . because it tends to absolve the plaintiff from any duty to exercise due care until after the actual discovery of the defendant's negligence, if there was any, thereby unduly restricting the duty of the plaintiff. The court failed to charge that the plaintiff was bound to exercise ordinary care to avoid the defendant's negligence after she could have become aware of the defendant's negligence, if there was any." This assignment is without merit. The charge was on the subject of contributory negligence, in which the judge properly called the attention of the jury to the rule of law stated in Code, § 105-603, that the plaintiff could not recover if by the exercise of ordinary care she could have avoided the consequences of the defendants' negligence. There was no attempt on the part of the judge, and the charge will not permit of any such construction, to limit the duty of the child to the exercise of ordinary care for her safety only after the negligence of the defendant became apparent, as contended in the assignment of error. In so far as the assignment of error is on the failure of the judge, in the same connection, specifically to call to the attention of the jury that the plaintiff was under a duty to exercise ordinary care for her safety, after she could by the exercise of ordinary care have discovered the negligence of the defendant, it raises no question for decision; for it has many times been held that "the failure to charge a proposition of law applicable to the case can not be taken advantage of by assigning error upon a charge which is abstractly correct." *Roberts* v. *State,* 114 *Ga.* 450. (40 S. E. 297) ; *Mayor &c. of Gaines-*

*ville* v. *Hanes,* 22 *Ga. App.* 589 (96 S. E. 349) ; *Hicks* v. *State,* 146 *Ga.* 221 (91 S. E. 57). The cases of *Ga. Ry. & Power Co.* v. *McElroy,* 36 *Ga. App.* 143 (136 S. E. 85), and *Jones* v. *Alred,* 41 *Ga. App.* 472 (153 S. E. 444), are not authority for the plaintiff in error. In the *McElroy* case, the judge expressly limited the duty of the plaintiff to the exercise of ordinary care "after" the negligence of the defendant "was discovered." The same is true of the *Jones* case. As we have already pointed out, the charge in the present case was substantially in the language of the Code section, and was not restrictive.

■ The fourth assignment of error is as follows: "Because the court erred . . in failing and omitting to charge and state to the jury fully and completely the contention of the defendant. Movant contends that the court failed to place before the jury the defendant's contentions that the plaintiff's injuries, if she was so injured, resulted from being struck by a car belonging to another individual, and that plaintiff was not hit by the truck which was owned by the defendant." In the petition it was alleged that Rosenthal was employed by Abelman and Finn, to operate a certain delivery-truck for their dry-cleaning business, and that on a named date, "Rosenthal did run into and knock your petitioner's daughter down with said truck he was driving." In their answer Finn and Abelman denied this allegation. The answer of Rosenthal set out that "for further answer this defendant says that if petitioner was injured, such injuries were occasioned by another who is unknown to this defendant, and that this defendant did not at any time injure, strike, or run into petitioner as alleged in her petition." The court in the charge specifically told the jury that the defendants Finn and Abelman denied that paragraph alleging that "Rosenthal did run into and knock . . petitioner's daughter down," and read to them verbatim the above-quoted part of the answer of Rosenthal. Further in the charge, the court said: "Before you would be authorized to find that the defendants Samuel Finn and Manuel Abelman, doing business as Colonial Dry Cleaners, as alleged in the petition, are responsible in this case in any view that you may take of it, you must first believe that Manuel Rosenthal, at the time the plaintiff was struck, *if you believe that she was struck by the truck which was being operated by Manuel Rosenthal, which is denied,* that he, Manuel Rosenthal was employed by Samuel Finn and Manuel Abelman, as alleged

in the petition, and that at the time he was engaged in their business, and was operating the truck within the scope of his employment." Under the above portions of the charge, we can not conceive how it can be said that the judge failed to call to the attention of the jury the contention of the defendants that their truck did not strike the plaintiff. However, as we are convinced, the judge having charged generally that the jury must first believe that the defendants' truck struck the plaintiff, before she would be entitled to recover, if amplification on the particular evidence showing that it did not strike the plaintiff, or if additional instructions on this contention were desired, appropriate written requests should have been submitted to the judge. "The office of a charge by the court is to give to the jury such instruction touching the rules of law pertinent to the issues involved in the pending trial as will enable them intelligently to apply thereto the evidence submitted, and from the two constituents law and fact make a verdict." *Thomas* v. *State,* 95 *Ga.* 484 (22 S. E. 315). In *Central R.* v. *Harris,* 76 *Ga.* 501, it was said: "Where the judge gives in charge substantially the law covering the case, if more specific instructions on any point are desired, they should be asked; but the law of the case must be given to the jury to the extent of covering the substantial issues made by the evidence, whether requested or not." In *Central of Ga. Ry. Co.* v. *McKinney,* 118 *Ga.* 535 (supra), it was said: "Where the judge states fully and accurately the law applicable to the issues involved, the mere failure to call the attention of the jury in specific terms to the contentions of the parties as shown by the pleadings, and to explain these contentions to them, will not, unless it is plain that the omission resulted in injury to the losing party, require the granting of a new trial." In the present case the only law applicable to this contention of the defendant was that, if the evidence disclosed that he did not commit the act resulting in the injury to the plaintiff, i. e. that the truck of the defendant did not strike the plaintiff, there could be no recovery. The judge certainly instructed the jury upon this point. If fuller and more elaborate instructions were desired, the plaintiff should have requested them in writing.

■ There is an assignment of error on a particular charge in

which the judge instructed the jury that if they should find that at the time of the injury to the plantiff Manuel Rosenthal was not in the scope of his employment and was not engaged in the master's business, Finn and Abelman would not be responsible for any negligence of Rosenthal; which assignment complains that the court failed, in this same connection, to state to the jury "that the defendant would not be responsible for the negligence of the individual driving his truck, provided there was such negligence, if the person so driving was not an employee of the defendant at the time of the alleged accident." For the. reasons pointed out in division 2 of this opinion, we do not think this assignment raises any question for decision; but there is certainly no merit in the assignment. In her petition the plaintiff alleged that the "defendant Rosenthal was employed by said defendants Abelman and Finn and said partnership as a driver of said delivery-truck." In their answer the defendants admitted this allegation. Their own testimony disclosed that they employed Rosenthal on a commission basis to solicit and deliver clothes, and that he was in their employment on the day in question. The only serious issue presented by the evidence was whether at the time in question Rosenthal was in the prosecution of his master's business, and within the scope of his employment. If he was not, the charge as given fully protected the defendants from any liability. The fact that there was evidence that he was not in the prosecution of his master's business and not within the scope of his employment would not of itself authorize a charge on the question whether or not he was an employee of the defendants.

■ This headnote does not need elaboration.

■ On the trial the plaintiff offered competent evidence that Rosenthal struck the plaintiff while driving a truck belonging to Finn and Abelman, and that at that time Rosenthal was employed by those defendants. On this showing the presumption arose that the servant was engaged in the master's business and within the scope of his employment; and the burden was then on the defendant to show that the person operating the machine was not his servant, or at the time of the injury was not engaged in the business of the master. *Gallagher* v. *Gunn*, 16 *Ga. App.* 600 (85 S. E. 930), *Dawson Motor Co.* v. *Petty*, 53 *Ga. App.* 746 (186 S. E.), and cit. The testimony of Manuel Abelman, one of the

defendants, was to the effect that Manuel Rosenthal was employed by the Colonial Dry-Cleaning Co., a partnership composed of himself and Samuel Finn, on the day of the accident to the plaintiff; that it was the business of Rosenthal "to go out and get clothes and bring them to the plant and then deliver them back to the customer;" that Finn took no active part in the management of the business, but was employed elsewhere, and Abelman could not say whether Rosenthal was engaged in his duties for the partnership at the time of the accident. Finn testified that at the time of the injury Rosenthal was employed by him and his partner Abelman, in the operation of their dry-cleaning business, and that his duties were substantially as stated by Finn. He further testified: "As to getting the clothes for the operation of the business, the plan I operated it was, they had a certain time in the morning to collect the clothes, and during the day they had nothing particular to do after that until around in the evening when they would go again and deliver the clothes. In the mornings the drivers generally finished their collections and bring in the clothes around 10 o'clock, and then they would come back in the afternoon to make deliveries around 4, 4:40, or 5 o'clock. Between 10 o'clock in the morning and 4 o'clock in the afternoon we had no control over those drivers." Rosenthal testified in part that he was employed by the Colonial Dry-Cleaning Company on the day in question, on a commission basis. "I was supposed to go on duty and receive the truck around 8:30, around down town, and get the work from the stores and bring it back from 8:30 to 9:30, then between 9:30 I would collect dry cleaning and take it to the plant around 10:30, and I had nothing to do after collecting it until it was time to deliver the dry cleaning back sometime around 4 or 4:30 o'clock in the afternoon, when I would go back to deliver the work back to the customers. I would go around on my pick-up trip in the morning and take it to the plant, and then we would not be supposed to do anything until the time to go back to the plant and get the stuff and deliver it back to the customers." With regard to what he was doing at the time of the accident, he testified: "I remember the accident that occurred at Washington and Rawson Street about 2 o'clock in the afternoon that day. Between 12:30 and 2 o'clock in the afternoon, around 12, I was at home and ate my lunch. My Dad does sheet-metal work on

Trinity Avenue, between Spring and Forsyth Street, and I wanted to go over there, and I didn't have any other way to go but walk, and so I took the truck and drove directly to my Dad's place of business. . . I had the car parked across the street from his place of business, and I drove from there straight to Washington Street, directly there, and I turned out Washington Street, turned to the right down Washington Street, and was going back down towards the plant."

This evidence, the plaintiff in error urges, sufficiently overcame the presumption that he was acting within the scope of his employment and in the prosecution of his master's business, so as to demand a verdict for the defendants Finn and Abelman. However, after careful consideration, we are unable to take such a favorable view of this evidence. We fully recognize that the presumption involved is a rebuttable one. The basis for the presumption is that it is in general an easy matter to prove the ownership of a car that inflicts an injury, but that whether the car was at the time of the injury being operated in the prosecution of the defendant's business is a matter peculiarly within the knowledge of the defendant, and one on which it is at times exceedingly difficult for the plaintiff to obtain proof. Therefore, if this presumption is to serve its purpose, in order to overcome it as a matter of law the evidence of the defendant should be clear, positive, and uncontradicted that the servant was not at the time in the prosecution of his master's business or acting within the scope of his employment. Thus, testimony of a defendant which tends to show that the driver of the truck was not in the prosecution of the master's business or within the scope of his employment, but is not altogether inconsistent with or antagonistic to the prima facie case made, and does not within itself affirmatively establish facts to show that the servant was not in the prosecution of his master's business or acting within the scope of his employment, is not sufficient, as a matter of law to overcome the presumption.

Let us take the case at hand. The plaintiff's evidence clearly disclosed that Rosenthal was a general employee of Finn and Abelman in the operation of a truck in their dry-cleaning business, and that it was his duty to solicit and deliver clothes. The defendants in their testimony admitted as much. The testimony

of Rosenthal would indicate that he was restricted in the use of the truck by the defendants, and that he was not authorized to solicit business at the time of the accident. However, the testimony of the other defendants, Finn and Abelman, is not subject to such interpretation, although Abelman does testify that it was the *general custom* that they solicited clothes before 10 o'clock in the morning and came back to deliver them around 4 o'clock, and that during that time they had no control over the drivers; but from his testimony it is clearly inferable that the employees, including Rosenthal, were at liberty to solicit clothes at any time during the day, although clothes obtained during those hours would not be delivered until the next afternoon. The testimony of Rosenthal was as follows: "My Dad does sheet-metal work on Trinity Avenue, between Spring and Forsyth Street, and I wanted to go over there and I didn't have any other way to go but walk, and so I took the truck and drove directly to my Dad's place of business. . . I had the car parked across the street from his place of business, and I drove from there straight to Washington Street, directly there, and I turned out Washington Street, turned to the right down Washington Street, and was going back down towards the plant." What does this testimony indicate was the purpose of his trip to his father's place of business? Was it about dry cleaning? Did it in any way concern the business of his master? Was the trip from its inception to its intended end, one *entirely* disconnected from the business of the master, or was the trip one which served both the personal ends of the servant and the business of the master? Had Rosenthal resumed his duties due to his master after having temporarily abandoned them? Did Rosenthal solicit or intend to solicit dry cleaning during this trip, or did he merely take the trip solely for his own personal business; and was he, at the time of the injury to the plaintiff, returning the truck to the cleaning plant for the purpose of leaving it there and later returning for the purpose of delivering clothes? All of these questions, and others which under the circumstances might arise in order to determine the liability of defendants, must be answered by inference from the testimony of Rosenthal. His testimony is not clear, positive, and direct, and is not without some evasion. He admitted that his territory for soliciting clothes was in the section over which his

trip to his father's and back to the plant took him. He was at the time of the accident headed towards the office of his employer; one witness testified that he thought the truck contained clothes at the time of the accident; others testified that they had seen him before in that vicinity in the same truck, soliciting clothes. We are firmly convinced that the question was one for determination by the jury; and since they have seen fit to determine it in favor of the plaintiff, and it has the approval of the trial judge, we do not think it within our power to interfere.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*