37688. HARDWICK *v.* GEORGIA POWER COMPANY *et al.*

DECIDED JUNE 30, 1959—REHEARING DENIED JULY 17, 1959.

*James L. Mayson,* for plaintiff in error.

*Troutman, Sams, Schroder & Lockerman, Harold C. McKenzie, Jr., Robert L. Pennington, Wendell J. Hilton,* contra.

QUILLIAN, Judge. ■ The bill of exceptions contains an assignment of error that the court erroneously ruled that Miller, a codefendant with Gurley and the Power Company and who did not move for a new trial or appeal to this court, was by operation of law, granted a new trial when his codefendants' motion, to which he was not a party, was granted. Miller was not a joint defendant with Gurley and the Power Company in the sense that the action against the three was joint, and not joint and several.

The pronouncement made as early as 1854 in the case of *Walker* v. *Dougherty,* 14 *Ga.* 653 and often repeated by both of our appellate courts, even as late as *Blevins Aircraft Corp.* v. *Gardner,* 68 *Ga. App.* 784 (1) (24 S. E. 2d 144) is: The effect of the grant of a new trial by this court is to require the case to be heard de novo unless specific direction be given in regard thereto.

This ruling simply means that the case stands for trial as to all matters pertaining to preliminary rulings, pleadings, including amendments, the admission of evidence and procedure as though it had never been tried, but does not mean that upon the grant of a new trial to some of several defendants who move for the same to order a trial de novo as to other defendants against whom a verdict was previously returned and who neither moved for a new trial nor were made parties to a motion for new trial.

The procedural process by which some of joint defendants against whom a verdict is rendered and who do not move for a new trial may be made parties to a motion for a new trial filed by their codefendants so that all defendants may be granted a new trial, if any are entitled to be granted a new trial, is an interesting subject. However, we are not privileged to discuss the procedure here, because the alleged liability of the defendants in this case is joint and several.

The decision of this case does not involve a consideration of appeals entered as provided by these Code sections nor according to Chapter 1, Title 6 of the Code. Code § 6-110 provides that one of several defendants may enter appeal without joining his codefendants. In Code § 6-111 is embodied the rule that all of the original parties to the case are bound by the judgment entered upon final appeal.

These Code sections apply to appeals entered from the judgment of a justice of the peace or ordinary and have no connection with motions for new trial or appeals to appellate courts taken on the grant or refusal of a new trial, or to the retrial of a case when a new trial is granted to one of several defendants. Hence, consideration of the sections is not involved in the decision of this case.

■ The evidence was in sharp conflict as to whether the defendant Gurley, for whose conduct the defendant Georgia Power Company, was responsible under the doctrine of respondeat superior, was negligent and as to whether his negligence was the proximate cause of the damage to the plaintiff's automobile. The general ground that the verdict is contrary to the evidence under the provisions of Code § 70-202, as construed by our courts, means that the verdict is without evidence to support it (*Southern Ry. Co.* v. *Adams*, 14 *Ga. App.* 366 (2), 80 S. E. 912), and could be disposed of without discussion, except for a particular contention of the plaintiff. He insists that the defendant, Gurley, admitted that he violated the provisions of Code (Ann.) § 68-1626 (a) (c), in that he did not slacken the speed of the truck he was operating in approaching the intersection at which time the truck driven by him collided with Miller's automobile, which collision resulted in damage to the plaintiff's automobile. Code (Ann.) § 68-1626 (a) and (c) provide: "(a) No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care  .  .  .

(c) The driver of every vehicle shall, consistent with the requirements of subdivision (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

In response to questions on cross-examination Mr. Gurley testified: "Q. Mr. Gurley, what were the weather conditions on the night of the accident? A. It was rainy. Q. And what was the condition of the streets? A. The street was wet. Q. Were they also slippery? A. Yes, sir. Q. What was your speed, Mr. Gurley? A. Approximately twenty-five miles an hour. · Q. Do you know what the speed limit in that vicinity was? A. I'm not sure, but I'd say it was around twenty-five miles an hour. Q. And did you know you were approaching an intersection? A. ˙ I know I'd been passing streets down the main thoroughfare. I'd been passing streets all down through there, and I didn't know— Q. You knew you were going to pass more streets? A. That's right . . . Q. Did you make any attempt to slow down in approaching that intersection? A. Well, I was traveling twenty-five miles an hour which I figured was the speed limit. I thought I was on the main thoroughfare. Q. Did you slow down your speed on account of approaching an intersection? A. When I approach an intersection at any time, I reduce my speed if there's any doubt in my mind, but at this particular time there wasn't a car in that intersection as I approached the intersection. Q. But in just approaching the intersection, you were driving along at twenty-five miles an hour? A. Right. Q. And you maintained that speed until— A. Until my partner— Q. Until your partner hollered and told you he wasn't going to stop? A. Absolutely. Q. Had you seen him up until that time? A. No, sir. Q. Had you seen the lights? A. Absolutely. Q. You knew there was a car coming out of the side street or knew there was a car in the side street; you saw the lights on it? A. That's right. Q. You recognized it as being the

lights of an automobile, did you not? A. That's right, as he went in the intersection, we did. Q. You didn't slow down at all for that reason? A. It would have defeated the purpose. I couldn't have stopped any sooner if there had been a train. I was already in the intersection. Q. You did not reduce your speed on account of rain, slippery streets, and bad visibility? A. Under the conditions we were driving, it wasn't necessary to reduce the speed. Q. Was it raining, the streets slippery? A. Raining. No objects in the way. A. Apparently there was an object in the way. You hit it or he hit you; you had a collision there? A. We had a collision, but at the time I went in the intersection no one was there, no cars coming, not this way or that way. Q. You did not reduce your speed on account of approaching the intersection or on account of the weather conditions then existing? A. No, under the conditions, I didn't think it was necessary. Q. But the thing is, you did not? A. No, sir. Q. Whether you considered it necessary, you did not reduce your speed? A. No. Q. Neither approaching the intersection or on account of the weather conditions? A. No . . . Q. Now, I'll ask you this, would it have been any way for my client's car to have been hurt had it not been for this collision? A. No, sir, the only thing I could have seen, just not have been there. Q. Not to have been parked there at the time? A. That's right."

The evidence adduced on the trial, particularly the testimony of the defendant Gurley, clearly makes an issue of fact as to whether the speed at which the defendant Gurley was traveling was in compliance with Subsection (a) of Code (Ann.) § 68-1626.

The only reasonable construction to be applied to Subsection (c) of Code (Ann.) § 68-1626 is that a driver must reduce the speed of his vehicle in approaching an intersection so as to bring its immediate control within his power and render it safe to go into the intersection at the reduced rate of speed. If a driver approaches an intersection at a very low and lawful rate of speed it is a question for the jury as to whether in order to comply with Subsection (c) of the Code section he need further reduce the speed of his vehicle. Whether the speed at which the defendant Gurley approached and entered the intersection,

under the circumstances shown by the evidence, needed to be reduced to meet the mandate of the Code section was one concerning which reasonable men might entertain opposite opinions.

So it is apparent that the question of whether Gurley violated the Code section and as to whether such violation was the proximate cause of the damages sustained by the plaintiff were questions of facts for the jury.

■ Ground 4 of the amended motion for new trial recites: "That the court erred in holding and ruling, at the call of the case, prior to the selection of the jury, over objection of movant, that as defendant George W. Miller had not participated in the appeal from a former verdict in this case, rendered by a jury on May 8, 1959, as aforesaid, was still valid and binding on defendant George Miller and that the sole purpose for which defendant George W. Miller would be allowed to appear was for the purpose of having the jury determine whether or not he would be entitled to contribution from defendants Georgia Power Company and Silas G. Gurley. Movant contends that this ruling was prejudicial and harmful to him and was error of such a nature as to demand a new trial." The ground contained an exception to the ruling as being contrary to Code § 6-111 and contended that when a case against joint tortfeasors is reversed a trial de novo is granted also to the tortfeasor who entered no appeal. This is an exception to a preliminary ruling of the trial court concerning the issues that would be submitted to the jury upon the trial of the case. Exceptions to preliminary rulings of the trial court can not be taken by motion for new trial. *Herndon* v. *State*, 178 *Ga.* 832 (1) (174 S. E. 597); *Trussell* v. *State*, 181 *Ga.* 424, 427 (182 S. E. 514).

■ Ground 5 of the amended motion for new trial alleged that the court erred in charging the jury concerning a facet of the case because additional instructions on the same subject should have been given. Such an exception can not be taken. *Booker* v. *State*, 16 *Ga. App.* 280 (3) (85 S. E. 255); *Abelman* v. *Ormond*, 53 *Ga. App.* 753 (187 S. E. 393). While the trial court should have refrained from referring to the verdict rendered against the defendant Miller on the former trial, exception was not taken to the charge on that ground.

■ Ground 6 of the amended motion for new trial complains of a charge because it failed to instruct the jury concerning an issue made by pleadings without quoting or designating the pleadings referred to by pages of the record on which they appear. The ground for this reason is incomplete, and is also without merit. It is not error for the court to fail to charge the law as to an issue not made both by the pleadings and evidence. *Limbert* v. *Bishop*, 96 *Ga. App.* 652 (101 S. E. 2d 148).

■ Ground 7 of the amended motion for new trial complains that the judge charged the jury: "As has been stated, gentlemen, there has already been a verdict and judgment rendered against defendant Miller in this case and if you should believe by a prepondcrance of the evidence that defendants, Georgia Power Company and Silas G. Gurley are also liable in the case, you would render a verdict against them, and the judgment of the court based on your verdict will comply with the law with reference to contribution between the defendants, if a verdict is rendered against these defendants who are now before you."

Only one assignment of error contained in the ground was sufficiently definite to merit consideration. The one valid assignment of error was that the charge complained of was "erroneous and not sound as an abstract principle of law." The ground does not furnish sufficient information to enable the court to ascertain whether the error was hurtful. But the rule is stated in *Anderson* v. *Southern Ry. Co.*, 107 *Ga.* 500 (4a,b) (33 S. E. 644), "A general assignment of error upon a designated portion of the judge's charge will be considered for the purpose of ascertaining whether or not the particular language thus complained of states a correct abstract principle of law.

"(a) If it does, then the investigation here must end; for in the absence of a specific assignment of error, this court will not inquire whether the words excepted to are or are not adjusted to the issues and facts of the case.

"(b) If an instruction, excepted to in general terms, be erroneous because it is not a correct or accurate statement of the law, then, as all error is presumably prejudicial, the record

will be examined for the purpose of ascertaining whether or not the party complaining has really been injured by the giving of such instruction."

Where separate judgments are entered against tortfeasors whose concurrent, independent negligence results in damage to the plaintiff's property, the verdict and judgment against each tortfeasor adjudicates the amount of his liability. In such circumstances there is no right of contribution between the tortfeasors. The right of contribution under our law is based upon one party bearing more than his share of "a common burden," as in the case of *Jackson* v. *Roberts*, 83 *Ga.* 358 (9 S. E. 671), where a joint judgment could be collected out of the assets of either defendant. Code § 37-303. It follows that the charge on the subject of contribution was not sound as an abstract matter of law.

A perusal of the record discloses that the plaintiff sued Georgia Power Company, George W. Miller and Silas G. Gurley for damages done to his automobile by the defendant Miller and by Gurley for whose conduct the defendant Georgia Power Company was alleged to be liable under the doctrine of respondeat superior. The cause was predicated upon the independent, concurrent acts of negligence alleged to have been committed by Miller and Gurley. A judgment against all defendants was entered up. Only Gurley and Georgia Power Company made a motion for new trial and were by this court granted a new trial.

One of the vital issues in the case was whether the negligence of Miller or that of Gurley, for whose conduct the defendant Georgia Power Company was responsible, caused the collision resulting in the damage to the plaintiff's automobile. The charge which informed the jury that Miller had been held liable by the verdict and judgment of the court did not leave the minds of the jury open as to whether Gurley's negligence was a proximate cause of the collision out of which came damage to the plaintiff's automobile.

It is a well established principle pronounced 110 years ago in the case of *Killen* v. *Sistrunk*, 7 *Ga.* 283, that where a jury is apprized of a former verdict and such information might militate against the interest of a party to the case on trial, it is ground

upon which a new trial may be granted the injured party. In the *Killen* case is the pronouncement (headnote 3): "Where a paper, which is capable of influencing the jury on the side of the prevailing party, goes to the jury by accident and is read by them, the verdict will be set aside, although the jury may think that they were not influenced by such paper; aliter where the paper is not read." *Waters* v. *State*, 25 *Ga. App.* 577 (103 S. E. 835) and *Morris* v. *State*, 49 *Ga. App.* 138 (174 S. E. 385) deal with cases where verdicts against co-defendants were allowed to go to the jury. In the several cases it was held that if the former verdict was read by the jury a new trial should be granted, but that since the jurors made affidavits that it did not come to their notice, the fact that it was read in the jury room wrought no mischief.

In *Waters* v. *State*, 25 *Ga. App.* 577, supra, where a verdict against a codefendant rendered upon another trial was permitted to go to the jury, this court in reversing Waters' conviction, repeated the pronouncement of the *Killen* case and observed that the ruling there made had been uniformly adhered to by both of our appellate courts. The opinion of the *Waters* case extended the rule somewhat by holding (p. 579): "This ruling has been uniformly followed by the Supreme Court and by this court. In the instant case it is evident, from all the facts stated in the motion for a new trial, that the jury read the Summerlin verdict before they wrote their verdict in this case, and it is probable that the reading of the former verdict influenced them in their finding in this case. The fact, as stated by the judge in his note, that counsel for the defendant made no motion to the court to have the paper on which the Summerlin verdict was written kept from the jury, does not, under all the other facts shown, render this ground unmeritorious."

The facts disclosed by the record do not overcome the presumption that the abstractly incorrect charge was prejudicial to the plaintiff's case.

The defendants insist in a splendid brief that the charge was not hurtful to the plaintiff, because the evidence demanded a verdict for the defendants, but with this contention we can not agree. The charge shows hurtful error, requiring the grant of a new trial.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, Chief Judge, dissenting. Ground 7 of the amended motion for a new trial complains of the following charge: "As has been stated gentlemen, there has already been a verdict and judgment rendered against defendant Miller in this case and if you should believe by a preponderance of the evidence that defendants, Georgia Power Company and Silas G. Gurley, are also liable in the case, you would render a verdict against them, and the judgment of the court based on your verdict will comply with the law with reference to contribution between the defendants, if a verdict is rendered against these defendants who are now before you." The assignment of error is as follows: "Movant contends that this portion of the charge was prejudicial and harmful to him and was error of such a nature as to demand a new trial in that said charge was erroneous and was not sound as an abstract principle of law; and that it failed in this paragraph and elsewhere in the charge to also charge that there had also been a verdict and judgment rendered against defendants Georgia Power Company and Gurley and that said judgment, against all defendants, including Miller, had been reversed by the Court of Appeals and was then void and of no effect as to any of the defendants; and that it was error to charge, by implication, that movant had a then existing, valid and binding judgment against defendant Miller, when, in fact, the judgment rendered against all parties defendant on the first trial of the case had been reversed on appeal; and that said portion of the charge was error in that it removed from the jury's consideration the question of whether or not defendant Miller was negligent and liable to movant for the damages suffered by him and had the effect of converting movant's suit against joint tortfeasors into an action by George W. Miller against Georgia Power Company and Silas G. Gurley for contribution to pay a judgment against all defendants that had been reversed by the Court of Appeals, and, in fact, did not then exist." My opinion is that the above exception is based on the sole contention that a new trial was granted to defendant Miller as well as to the Georgia Power Company and Silas G. Gurley. If I am wrong about that

construction I cannot conceive how the charge relating to contribution could possibly have been harmful because the court did not state what his judgment would provide if the jury found against the defendants then involved. As to the question of contribution there was no proposition of law charged upon. The charge was not harmful for any reason assigned.