## WALLER *v.* THE STATE.

1. It was, upon the trial of a person indicted for the offense of murder, after merely reading to the jury the sections of the Penal Code relating to the various grades of homicide, including those bearing upon justifiable homicide, save that which declares, "The homicide appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged," erroneous to sum up the contentions of the accused, the same, if true, making a clear case of justifiable homicide, without distinctly informing the jury that if the accused were justifiable in his act, he should be acquitted.

2. Where a writing containing the testimony of a witness who was sworn upon a former trial, but who has since died, is offered in evidence, all of such testimony which is relevant and material should be received; and while the party offering it is not bound to read the entire testimony,

those portions of it not read by him may be read by the opposite party as evidence introduced by him who first offers it.

3. The foregoing notes cover the material questions presented for decision by the present record.

Argued October 15, — Decided November 15, 1897.

Indictment for murder. Before Judge Felton. Bibb superior court. April term, 1897.

*John R. Cooper* and *Marion W. Harris*, for plaintiff in error. *Robert Hodges, solicitor-general,* contra.

ATKINSON, J. 1. Waller was indicted for the offense of murder, and was found guilty of voluntary manslaughter. Upon his trial the evidence offered by the State was sufficient, if believed by the jury, to support the verdict; but according to the statement of the accused, he made out a clear case of justifiable homicide. The trial judge gave in charge to the jury, reading from the Penal Code, the provisions of our law bearing upon the offense of murder and voluntary manslaughter, and likewise gave in charge to the jury the law defining justifiable homicide. He undertook to, and did, state accurately the contentions of fact both upon the part of the State and upon the part of the accused, and charged the jury correctly in regard to this statement; but did not either read to the jury section 76 of the Penal Code which provides, " The homicide appearing to be justifiable, the person indicted shall, upon the trial, be fully acquitted and discharged," or otherwise inform them that if they found the contentions of the accused well founded in fact, he would be entitled, upon principles of self-defense, to a verdict of not guilty. Complaint is made that the failure of the judge to give this instruction was prejudicial to the accused; and we think this complaint is well founded. The principle of homicide in self-defense was directly involved in this case, and the accused was entitled, as a substantive, affirmative defense, to the benefit of his contention that the homicide was really justifiable. It is true that, in the course of his instructions, the trial judge charged the jury that if the accused were neither guilty of murder nor voluntary manslaughter, he should be acquitted; but he did not at any time state to them what should be their finding in the event they

found he was justified in his act.  The effect of this instruction was to give to the accused the benefit of his theory of justifiable homicide only as a negative defense, and authorized the jury to consider the facts appearing in support of that theory only in so far as it tended to negative the idea of his guilt either of murder or voluntary manslaughter; whereas justifiable homicide is in law itself a substantive and affirmative defense, and if found well supported in fact, the accused would be entitled to an acquittal without reference to the evidence which apparently tended to convict him of the offense of murder or voluntary manslaughter.  The omission complained of was evidently the result of an oversight upon the part of the learned judge who presided in this case, but it was nevertheless effectual to withdraw from the jury the consideration of his theory of justifiable homicide as a separate, substantive defense to the indictment.  The judge recognized the right of the accused to make a statement in his own behalf, and in the course of his instructions stated fully to the jury the contentions of the accused based upon that statement, but, as we have seen before, omitted to tell them what result would follow if they found his statement true and that in fact the homicide was justifiable.  The practical effect of this was the denial to the defendant of the right to have the theory favorable to him, which was based upon his statement, considered by the jury; and we are, therefore, constrained to hold that therein error was committed.

2.  During the trial the State offered in evidence the stenographic report of the testimony of a witness sworn on behalf of the State in the former trial of the same case, and who had since died, and read to the jury the direct examination of such witness.  To the introduction of this evidence counsel for the accused objected upon the ground that, without the cross-examination also being read in evidence by the State, no part of the testimony of such witness was admissible.  From the confused statement of the facts as they appear in the record we glean that the court admitted the testimony of the deceased witness, but required the solicitor-general to read only such portions of it as he deemed material to the State's case, an-

nouncing to the counsel for the accused that he might read the remainder if he saw proper. This was not done by counsel for the accused; and he complains that the court erred in not requiring the solicitor-general to read the entire testimony. We think there was no error in this ruling. The accused offered no evidence which was excluded. The State offered the entire testimony which was received. Having been offered by the State, the counsel for the accused was authorized to read in evidence as testimony coming from the State all such portions of such evidence as was material to the issue and without prejudice to any right which he might have had arising from the fact that he introduced no evidence. When the State offered the testimony of the deceased witness, it might be analogized to the condition of affairs that would exist if the witness were in life, and had been offered to testify on behalf of the State. In that event the State would have been entitled to subject him to a direct examination, but would not have been required to have cross-examined him at the instance of the accused; and if the accused omitted, for any reason, to draw from him facts within his knowledge, such failure would afford no ground for the rejection of that portion of the testimony elicited upon the direct examination. The cross-examination is a privilege of which the accused is entitled to avail himself if he see proper; so the right to read in evidence the relevant portions of the testimony of the deceased witness elicited upon his cross-examination was a privilege of which the accused might avail himself but which he waived in failing to read to the jury such portions of the testimony. His failure to read the cross-examination afforded no reason for the rejection as evidence of those facts elicited upon the direct examination. Again, such a proceeding may be likened to the reading of interrogatories in a civil case. The party offering the answers is not bound to read both the direct and cross-examination. If he read either, he adopts the witness as one introduced by himself, and the other party is entitled to read the cross-examination without being held to have introduced evidence upon his own behalf. This being true, and counsel for the accused not having elected to read the cross-examination, we

think it affords no ground for the rejection of the testimony elicited by the direct examination of the deceased witness. Counsel for the accused was at liberty to have done so had he desired; having failed, he waived his privilege, and could not, by his failure to read such examination, deprive the State of the testimony to which it was entitled. This case does not fall within the principle ruled in the case of *Burnett* v. *State*, 87 *Ga.* 622. In that case the State offered a portion of the testimony of the witness delivered upon a former trial, for the purpose of impeaching his statement, he being himself then on trial; in this case the stenographic report of a deceased witness was offered as original evidence of the facts within his knowledge.

3. There are no other questions of law involved in the present case which require consideration; and inasmuch as the judgment is reversed, we forbear to express any opinion upon the probative value of any of the evidence which appears in the record. Because of the failure of the judge to charge as hereinbefore indicated, the judgment of the court denying a new trial is          *Reversed. All the Justices concurring.*