43418. WELLS v. ALDERMAN.

Argued February 5, 1968—Decided April 19, 1968—
Rehearing denied May 2, 1968.

*Conyers, Fendig, Dickey & Harris, Albert Fendig, Jr.,* for appellant.

*Alaimo & Taylor, Anthony A. Alaimo, James A. Bishop,* for appellee.

EBERHARDT, Judge. ■ While the evidence of negligence may be weak, we are unable to say that there was not some evidence from which the jury might conclude that the defendant was not keeping a proper lookout ahead and that this may have been the cause of the incident. Consequently, we find no error in the overruling of the general grounds of the motion for new trial or the overruling of the motion for judgment n.o.v. *Haygood v. Bell,* 42 Ga. App. 602 (4) (157 SE 239).

■ The first enumeration of error is as to a charge of *Code Ann.* § 68-1656 (a) dealing with the duties owing by a motorist to a pedestrian crossing in an unmarked crosswalk. Defendant excepted, urging that there was an utter failure of evidence to show the existence of any kind of crosswalk at the place where Mr. Alderman was crossing Norwich Street Extension, and that for this reason the charge was inappropriate and unauthorized.

On cross examination the defendant testified that the incident occurred "right past the intersection," that he recalled no marked crosswalk, but that people did normally cross the street in the area. J. G. Fales, a county patrolman, testified that it occurred "a few feet north of the junction or intersection with the Old Jesup Road—at least 45 to 50 feet—in front of the whiskey store." He had assisted at the intersection in getting school children back and forth across Norwich Street. There was no painted crosswalk. As to where pedestrians normally crossed, "in my opinion it would be a choice for the person to decide."

Robert Alderman, a son of the deceased, testified that he was called to the scene very shortly after his father was hit by the car and that he found him lying on the road some distance north of the intersection of Norwich Street Extension and the Old Jesup Road. "I don't know how far it was. There was a crosswalk there, and I believe that is where he was going across— but I don't know. . . *It was right opposite the package store. There used to be a crosswalk there, but I don't know whether there was one there this night.*" Mr. Roy B. Smith testified that

prior to this occasion there had been no painted crosswalk for pedestrians in front of the Dixie Package Store. He had been in and was familiar with the area for some time previously. As to where people generally crossed the street, "Well, when I was going to the whiskey store, I would cross there, but I would usually go down. I walked down there a lot, see. And I go to S. O. Jenkins (service station) and I get cigarettes and kerosene for my heaters, and stuff. And I walk on down even with the station wherever I am going to the station, and walk straight across. And if I were going to the whiskey store, I would walk straight across the street."

. Mr. Gerald Spence, a former policeman, testified: "I know there was one place in the vicinity of this accident several years ago as a crosswalk *for school children.* However, to my knowledge *it was never marked anywhere to give motorists the knowledge that there* was a crosswalk ahead. In other words, *it was not used for any other purpose than for school children* to cross. A lot of times we would drop off policemen there in the morning and in the evening and they would walk the children across at this crosswalk." As to where the policeman might be stationed, "it was according to whether the children were going to school or from school as to which side of the road he would be on. The school children would come up to him and he would walk out and stop traffic and then the children would proceed on across the street. . . I don't believe it was too far north of this school crossing area where the body was lying."

Only two kinds of crosswalks are recognized in the law—a marked or painted one, which may or may not be at an intersection, and an unmarked one which is only at an intersection. Plaintiff does not now contend that there was any proof of a marked crosswalk, but relies entirely upon the showing of an unmarked one.

An unmarked crosswalk is defined as "That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable roadway." *Code Ann.* § 68-1504 (3) (a).

Acceptance of any definition of an unmarked crosswalk other

than that in the statute, or holding that simply because people do cross, even "normally," in order to get to a place of business on the opposite side makes a crosswalk would, in effect, make the whole roadway a crosswalk. If there is to be one other than *at the intersection* it must be marked in some manner so that motorists may know of it. This is clearly indicated by *Code Ann.* § 68-1504 (3) (b). There was no proof of any intersection in the vicinity of the occurrence other than that with the Old Jesup Road. All of the testimony indicates that Mr. Alderman was struck beyond the intersection near the front of the Dixie Package Store, making it impossible for him to have been in a lawfully recognized unmarked crosswalk. This is supported by diagrams introduced in evidence by both plaintiff and defendant. "[I]f there was no evidence to support this ground of negligence it should not have been submitted to the jury." *Atlantic C. L. R. Co. v. Anderson,* 75 Ga. App. 829, 833 (3) (44 SE2d 576), and citations.

■ There is exception to a charge, which plaintiff had requested, that "the law of Georgia requires the operator of a motor vehicle to reduce his speed as he approaches an intersection of public streets and highways of this State. The plaintiff contends that the defendant violated this provision of the law in that he did not reduce his speed as he approached the intersection of the Old Jesup Road with Norwich Street Extension. If you find that the defendant failed to reduce his speed as he approached this intersection, such conduct would amount to negligence as a matter of law. If you further find that such conduct was the proximate cause of the death of Mr. Alderman, it would be your duty to return a verdict for the plaintiff." The exception was: "We take the position that there was no requirement on Gene Wells to reduce his speed as he came to this intersection and further that this would be immaterial and irrelevant in determining the cause of the case before us," and that the evidence indicated that the deceased was not struck in the intersection, but beyond it.

This request to charge was based upon that portion of *Code Ann.* § 68-1626(c) reading: "The driver of every vehicle shall, consistent with the requirements of subdivision (a)[1], drive at an

appropriate reduced speed when approaching and crossing an intersection . . ."

Under the rulings in *Moye v. Reddick,* 20 Ga. App. 649 (3) (93 SE 256) ; *Huckabee v. Grace,* 48 Ga. App. 621 (2) (173 SE 744) ; and *Atlantic Co. v. Jones,* 86 Ga. App. 515, 523 (71 SE2d 824), it would not have been error to charge the principle of this Code section. The occurrence was close enough to the intersection to have justified it.

While the exception to this requested charge may not have been specific enough to include it (which we do not here decide) so that standing alone it would require reversal, there was inaccuracy in omitting the word "appropriate" which the statute includes, and which may afford a very different meaning that the jury may employ in determining whether there was negligence in failing to reduce speed. Since other errors will require another trial of this case, and this one certainly would do so had the exception been specific in including it, we here point out the error in the request, and the reasons therefor.

If, from the evidence, the jury should conclude that in the light of conditions then existing the vehicle was already being driven at an appropriately low rate of speed when approaching the intersection a further reduction would not be required. The only reasonable construction to be applied to Subsection (c) of *Code Ann.* § 68-1626 is that a driver must, if necessary, reduce the speed of his vehicle in approaching an intersection so as to bring its immediate control within his power and render it safe to go into the intersection at the traveled rate of speed. If a·driver approaches an intersection at a reasonable and lawful rate of speed it is a question for the jury as to whether in order to comply with Subsection (c) of the Code section he need further

---

[1]Providing that "No person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

reduce the speed of his vehicle. *Hardwick v. Ga. Power Co.*, 100 Ga. App. 38, 43 (110 SE2d 24).

This becomes obvious if we suppose a situation in which one on a busy thoroughfare approaches an intersection of a much less traveled street, or one where traffic is controlled by lights and he has the green light, at a speed already as low as or lower than that required by law in the area. If he slows further he may well cause those approaching from the rear to collide with his vehicle, or start the backing up of traffic on the street. The jury should consider the conditions obtaining in each case in determining whether there should have been a further slowing on approaching the intersection to render the speed "appropriate." Traffic rules and traffic control must be sensible and realistic.

■ An exception to a charge which recognizes its abstract correctness and merely asserts that it is inappropriate under the evidence does not show error where the evidence did not render the charge inappropriate. Consequently, a contention made for the first time in this court that the charge on the doctrine of last clear chance was abstractly incorrect cannot be considered. *Biddinger v. Fletcher*, 116 Ga. App. 532 (1) (157 SE2d 764). As to when a charge on this subject is appropriate, see *Palmer v. Stevens*, 115 Ga. App. 398 (3) (154 SE2d 803).

■ Exception was made to a charge that "plaintiff further contends that the defendant was negligent in failing to apply the brakes to his Corvair automobile in time to stop and avoid hitting plaintiff's husband *while he was walking in a crosswalk*. If you find from the evidence that this was true and that this conduct on the part of [defendant] constituted negligence which proximately caused the death of plaintiff's husband, it would be your duty to return a verdict for the plaintiff," on the ground that there was no evidence that plaintiff's husband was in a crosswalk, making the charge inappropriate and unsupported. We agree with this contention. It is unnecessary to recount the evidence or the citations of authority which we have set out in Division 2.

■ The court charged that the defendant was under a legal duty to give audible warning with a horn when reasonably necessary to insure safe operation of his vehicle, and that if they

should find that defendant failed so to do and that his failure was negligence which proximately produced the death of plaintiff's husband, a verdict should be returned for the plaintiff. Defendant excepted on the ground that it did not appear from the evidence that defendant had opportunity to sound his horn and thus the charge was not adjusted to the facts. While it may have been unlikely that the jury would conclude that the defendant had opportunity to sound his horn after discovering the presence of plaintiff's husband in the road some ten feet ahead, we think that this is nevertheless a factual question and find no reversible error in the charge. A better charge would certainly have included an instruction that the jury should consider whether the defendant had reasonable opportunity to sound his horn after he discovered Mr. Alderman's presence on the road in determining whether a failure to sound it was negligence.

■ At the request of the plaintiff the court charged the language of Headnotes 1, 2 and 5 of *O'Dowd v. Newnham,* 13 Ga. App. 220 (80 SE 36). Defendant excepted to the charge on the grounds that there was no evidence of thoughtless inattention on the part of the defendant, that the occurrence did not happen on the streets of a city, that it was not adjusted to the facts and the evidence, and that since Alderman was not within the confines of a crosswalk it had been his duty to yield to the oncoming automobile.

We find no merit in the exception as to thoughtless inattention. Since the defendant did not see Mr. Alderman, who was wearing a white shirt, until within some ten feet of him, though the car headlights were on, the jury might conclude that there was inattention. Nor do we find merit in the exception that the occurrence was not on a city street. Though it may have been outside the city limits of Brunswick, the evidence indicated that Norwich Street Extension was one carrying heavy traffic into and out of the city. But the rule as to the duty of pedestrians crossing at places *other than at a crosswalk* is stated in *Code Ann.* § 68-1657, which is different from that indicated in this charge, and for this reason the charge was error.

While there was no exception before the trial court on the ground that the language of Headnote 5 of the *O'Dowd* case

places a higher degree of care on the driver of a vehicle than does the law, we call this to the attention of the court so that the error will not occur on another trial. The standard required of the driver of a vehicle in this situation is invariably one of *ordinary care (Davies v. West Lumber Co.,* 32 Ga. App. 460 (123 SE 757)), and it is error to charge a standard of *exceeding carefulness,* though that expression is included in Headnote 5 of the *O'Dowd* case. See *Giles v. Voiles,* 144 Ga. 853, 856 (88 SE 207). "It is not always proper for the court to charge the jury in language used in one of the decisions of the court. Sometimes the language is argumentative, and sometimes it merely expresses the opinion of the judge delivering the opinion, where it is not precisely upon an issue presented in the record. *Chedel v. Mooney,* 158 Ga. 297 (11) (123 SE 300). And see *Wilborn v. Barnes,* 28 Ga. App. 254 (3) (110 SE 738). This is especially true where the excerpt from the opinion is itself erroneous as an abstract principle of law.

■ From a certified copy of the transcript of the evidence taken at a coroner's inquest defendant tendered the testimony of an eyewitness, asserting that the witness was unavailable, that for three weeks defendant had been attempting to get him served with a subpoena and that his whereabouts was unknown, save that there was hearsay information of his being in Jacksonville, Florida. The evidence, though relevant, was rejected.

This evidence was not offered for the purpose of impeachment, as was done in *Darby v. Moore,* 144 Ga. 758 (87 SE 1067), and consequently was properly rejected under the rulings in *Supreme Council Royal Arcanum v. Quarles,* 23 Ga. App. 104 (97 SE 557) ; *Sovereign Camp of the W.O.W. v. Winn,* 23 Ga. App. 760 (2) (99 SE 319).

■ For the same reason it was not error to refuse to admit a certified copy of the entire transcript of the proceedings before the coroner.

■ While cross examining Ray Arthur, an eyewitness to the occurrence, plaintiff's counsel questioned him relative to a statement which he had made in his deposition taken prior to the trial, for the purpose of showing some conflict in his testimony there and that which he was then giving from the stand, and

tendered the statement in evidence. Defendant objected on the ground that the statement was taken out of context and urged that it not be admitted unless relevant portions explanatory of the statement were also placed in evidence. The objection was overruled. We think the rule expressed in *Code Ann.* § 38-2101 (5), and now appearing in *Code Ann.* § 81A-126 (d) (5), providing that if only a part is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, is applicable. True enough, the rule also provides that "any party may introduce other parts," so that the defendant might have done so without requiring it of the plaintiff, but he could not be deprived of the right to exact of the party offering the part to make a full and fair disclosure by offering all portions relevant to the particular statement. Fairness demands that no less than all portions relevant to that interrogated about be introduced at the same time. These may fully explain any apparent conflict, or at least place the witness in better position to reconcile or explain it. A statement out of context and without accompanying explanatory matter may be damaging and unfairly so.

■ While cross examining Mr. Gerald Spence, a former county policeman who made an investigation of the occurrence, counsel for plaintiff sought by means of a hypothetical question to prove the speed at which the defendant traveled as he struck Mr. Alderman. The witness called attention to the fact that answer to the question would be dependent upon a number of variables not included in the question, such as the condition of the brakes, the pressure applied, and how long applied before coming to the stop, as well as the distance traveled from the time of application to stopping, and the condition of the surface of the road. Defendant objected to the question on the ground that it was not based upon facts which had been proven and thus no proper foundation for the asking of the question had been laid. The objection was overruled, and the witness was allowed to answer, saying that though he was not an expert, he would judge that under the conditions outlined in the question the speed was probably sixty miles an hour.

While in general, reliance may be had upon circumstantial evi-

dence for the proof of an essential fact in the framing of a hypothetical question, it cannot be permitted to include as a necessary consideration a number of variables which are unproven.

Even if we should find no fault with the question because of these deficiencies since the witness was being cross examined when counsel might test the capacity of the witness as an expert, yet as the witness himself stated, his answer was dependent upon variables unknown to him and *not included in the facts of the question,* his answer was pure speculation, without probative value and proved nothing as to the speed of the vehicle. It should have been excluded.

The denial of the motion for new trial was error, and is reversed.

*Judgment affirmed in part; reversed in part. Felton, C. J., and Whitman, J., concur.*