## 49283. CONNER v. MANGUM.

EBERHARDT, Presiding Judge.

Frank J. Mangum brought suit against Harold B.

Conner seeking damages for injuries which he received when he was struck by Conner's car, Mangum being a pedestrian. The evidence disclosed that Mangum and a friend had been out on Lake Lanier fishing during the afternoon, and between them they had consumed a fifth of wine, Mangum estimating that he had consumed a pint of it. After returning to town he went to a package store on Industrial Boulevard in Gainesville for purchasing more wine. The proprietor refused to sell to him because of his apparent condition and he left the store and walked out into the street, intending to cross it and return to his parked car. He testified that it was still light, but other witnesses testified that it was after sundown and dark; cars were traveling on the street with lights on, and traffic on Industrial Boulevard, having one lane for traffic east and one for traffic west, was heavy.

Conner, his wife and his brother-in-law and a small grandchild were riding in his car. All of the adults testified that they had left Conner's office, gone with the brother-in-law to look at some building lots, and were then taking him to his place of employment in town to get his car. All testified that suddenly the car struck something which, coming up on the hood of the car to the windshield, appeared to be a man and turned out to be Mangum. All testified that they were looking ahead and had not previously seen the man. Mr. Conner was driving his car. His lights were on. His brakes were in working order and when he struck Mangum he instantaneously applied the brakes and brought the car to a stop. An ambulance was called and Mangum was sent to the hospital. Conner directed traffic until the police arrived, and he informed them what had happened and then went to the hospital to see whether there was anything he could do for Mangum.

The occurrence was on December 11, 1970, and on December 23 he gave a written statement to his liability insurance carrier, which had been drafted by the adjuster, in which Conner was quoted as saying that he had not seen Mr. Mangum until he possibly caught a glimpse of him "right before I hit him. . . it was instantaneous, and the first time I knew it was a man was

when I saw his face in my windshield. . . . About the same moment [that I caught a glimpse of him] the car collided with the man." On the trial Mr. Conner testified that it happened "all at once — bam, and I immediately slammed on my brakes and came to a halt to see what it was. . . . As I recall it came straight up to my windshield and went down on the other side back onto the street. I didn't see him until I saw his face in the windshield." This testimony was corroborated by that of Mrs. Conner and Mike Gravitt, his brother-in-law, each of whom testified that he or she had not seen Mangum until his face came up into the windshield. All testified that traffic with lights on was moving heavily in both directions and that Conner had not passed any sort of vehicle since before turning onto the Industrial Boulevard. Mr. Mangum was dressed in brown trousers and a yellow shirt. He was not in a crosswalk, but had walked out into the street at a point in front of the package store a short distance from the nearest intersection.

Mr. Mangum testified that he came out in front of a car parked parallel with the sidewalk and while in front of it had looked in both directions and saw no traffic approaching and then walked on out into the street. He never saw the Conner car and did not know it was approaching until it struck him.

Mangum testified that he had drunk no alcohol during the day except the wine which he and his friend consumed out at the lake. The Conners and Gravitt testified that none of them had had anything alcoholic to drink that day. There was no contrary evidence as to that. All testified that he was driving at a speed of from 15 to 20 miles per hour when the car struck Mangum, and that he had been driving at the same speed for some distance back; traffic conditions had required it.

The case was tried before a jury which, after consideration of the evidence and the charge returned a verdict: "We the jury find equal negligence of both parties, but with circumstances in favor of the plaintiff in the amount of $10,000." The judge refused to receive the verdict because of its inconsistency, explained this to the jury and sent them out for further consideration. Another verdict was then returned simply awarding

$10,000 to the plaintiff.

Defendant moved for new trial, amended it, and the motion as amended was denied. This appeal followed, enumerating error (1) on the denial of the motion, (2) the refusal of the court to accept and publish the first verdict and enter judgment for the defendant thereon, (3) charging that a motorist is bound to anticipate that on a public street or highway other persons having equal rights with motorists may be there, (4) charging that if the jury should find that plaintiff's injuries resulted from the defendant's failure to control his speed so as to avoid the collision it would constitute negligence per se, authorizing a verdict for the plaintiff, (5) a charge on comparative negligence given on plaintiff's request, and (7) charging on the doctrine of last clear chance. *Held:*

1. Appellant's argument in support of the general grounds stems from the first verdict that the jury sought to return, but which the court did not receive. If that verdict had been received and published there would be merit in it. But since it was not, and since implicit in the verdict which was received and published is a finding that the negligence of the defendant exceeded that of the plaintiff, and since this court is authorized only to review errors of law which may have occurred below, we find no reversible error in the general grounds.

2. When the jury returns a verdict which is obviously conflicting, it is proper for the judge to explain the conflict to the jury and send them back for further consideration; it is not required that he receive and publish it. *Smith v. Pilcher,* 130 Ga. 350 (1) (60 SE 1000). With the conflicting findings appearing the judge was fully authorized to use his power of supervising the trial in trying to get a verdict which would be without conflict and would be the product of the jury.

3. The court charged: ". . . the driver of an automobile is bound to use reasonable care, and to anticipate that persons along a public street or highway, or other persons having equal rights with motorists may be there, and the driver of an automobile does not have the right to assume that the road ahead of him is clear but must keep a diligent lookout ahead for pedestrians in traffic." Timely exception was made to this charge on

the ground that it could have no application since the plaintiff was not in a crosswalk.

As was pointed out in *Wells v. Alderman,* 117 Ga. App. 724, 729 (162 SE2d 18), only two kinds of crosswalks are recognized by the law of this state, (1) marked or painted on the street or highway by authorities of the public body having jurisdiction, and (2) that space at an intersection which constitutes a crosswalk under the definition found in Code Ann. § 68-1504 (3) (a). While there was some testimony that people habitually cross the street in front of the package store, this does not make a crosswalk of it, and we so held in *Wells v. Alderman,* supra.

Photographs of the street showing the portion from the nearest intersection to and beyond the package store clearly show that there was no marked crosswalk, either at the intersection or elsewhere in the area near the package store. Hence, the only lawful crosswalk is that defined by § 68-1504(3) (a), and there is no evidence in this record that would authorize a finding that the plaintiff was in it. In that situation the driver of the automobile has the right of way and a charge to the effect that the pedestrian has equal rights is erroneous. *Griffin v. Odum,* 108 Ga. App. 572 (133 SE2d 910); *Hollis v. Lipp,* 118 Ga. App. 575 (164 SE2d 885).

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway: Provided, however, that this section shall not apply to roadways in areas where there are no crosswalks or intersections at which pedestrians may cross the roadway, but that on such roadways in such areas pedestrians crossing the roadway shall have equal rights with vehicles on the roadway." Code Ann. § 68-1657 (a). It is obvious that the proviso in this section relates to roadways in the areas where the intersections are generally great distances apart, and not to those in a municipality or developed area having streets and street intersections which afford ready access for crossing. *Taylor v. Crawford,* 119 Ga. App. 262 (167 SE2d 404).

"A charge relative to the respective rights of a

pedestrian and a motorist on the highway which does not take into account whether the pedestrian was in a crosswalk, as provided by statute, or was at some other place on the highway [or street], is error." *Wells v. Alderman,* 117 Ga. App. 724 (7), supra.

4. There is exception to a portion of the charge instructing that if the plaintiff's injuries and damages were proximately caused by failure on the part of the defendant to control his speed so as to avoid the collision in question, the same would constitute negligence per se and would authorize a verdict for the plaintiff.

A careful reading of the record reveals no evidence to support the charge. There was no evidence as to speed other than the testimony of Mr. Conner and the other adults in the car with him, all of whom place it at no more than 20 miles per hour and in keeping with that of other vehicles in the line of traffic. He was able to stop almost instantaneously when he learned that he was striking somebody. Moreover, this charge is calculated to place a greater burden on the driver of a vehicle than does the law. *Thomason v. Willingham,* 118 Ga. App. 821 (1) (165 SE2d 865).

5. There is exception to a charge on comparative negligence: "If you find from the evidence that the plaintiff was negligent in some manner *and the defendant's negligence* also contributed to the injury, and was of greater degree than the plaintiff's negligence, the plaintiff could still recover, although recovery would be diminished in proportion to the negligence of the plaintiff as compared to that of the defendant." The complaint is that the language of this charge presupposes negligence on the part of the defendant and thus amounts to an expression of opinion by the court that the defendant was negligent.

The language of the charge could have the effect asserted, and since there is to be another trial we direct that the language be altered, placing on the jury the duty of making a finding as to whether the defendant was negligent just as it does relative to the plaintiff.

6. The charge on last clear chance was inappropriate here. There is no evidence in the record from which the jury could find or infer that the defendant

saw and knew of the plaintiff's perilous position and that he realized or had reason to realize his helpless condition. The whole of the evidence is to the contrary. The slight difference in the facts as found in the statement which the defendant gave to his insurance adjuster, and his testimony, by deposition for discovery and as a witness on the trial is not enough to justify a different conclusion. In the statement defendant asserted that "I could possibly have caught a glimpse of him right before I hit him, but it was so instantaneous that if I caught a glimpse of him in the windshield it happened just like that. . . to know that it was a man, the first time I knew it was when he was in the windshield. At about that same moment the car collided with the man. I applied my brakes, but the man was already up in the windshield." On the trial he testified that the first time he saw the plaintiff was when he came up into the windshield.

Thus, whether he got a "glimpse" of the man just before striking him or after striking him, it clearly appears that he did not know and realize the perilous condition of the plaintiff and had no opportunity to take evasive action to protect him from injury.

The last clear chance doctrine simply has no application unless the defendant knew of the plaintiff's perilous situation and had opportunity to take proper evasive action to avoid injuring him. It does not apply to a "should know" or "should have known" situation. *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665 (88 SE2d 6); *Bennett Drug Stores v. Mosely,* 67 Ga. App. 347 (20 SE2d 208); *Palmer v. Stevens,* 115 Ga. App. 398 (3) (154 SE2d 803); *Central of Georgia R. Co. v. Little,* 126 Ga. App. 502 (1) (191 SE2d 105).

*Judgment reversed. Deen and Stolz, JJ., concur.*

ARGUED MAY 7, 1974 — DECIDED MAY 22, 1974 — REHEARING DENIED JUNE 14, 1974.

*Whelchel, Dunlap & Gignilliat, Weyman H. Forrester,* for appellant.

*Palmour, Palmour & Lawson, James E. Palmour, III,*

for appellee.