## 32421. LEE v. THE STATE.

BOWLES, Justice.

Appellant was indicted and convicted of the offense of theft by retaining stolen property. Upon his motion for new trial being overruled, he appealed to this court. The general grounds are not assigned as error. Appellant does, however, enumerate and insist upon seven other errors which he contends were committed by the lower court.

1. Appellant attacked the indictment with a written pleading which he designated "Demurrer and Special Plea in Abatement and Motion to Quash" contending among other things that the statute under which he was indicted was unconstitutionally enacted by the General Assembly, in that the indictment was apparently predicated on Ga. L. 1968, pp. 1249, 1292 (Code Ann. § 26-1806), which contained matter different from what is expressed in the title of the Act, in violation of the Georgia Constitution, Art. III, Sec. VII, Par. VIII (1945) (Code Ann. § 2-1908). Thus, appellant attacks the relatively new Criminal Code of Georgia and specifically § 26-1806 of that Act.

The heading or preamble of that Act contains in part the following language: "An Act to revise, classify, consolidate, and supersede the present laws relating to crimes and the punishment therefor and to establish new laws relating thereto; to define that which constitutes each crime . . .; to provide a new Criminal Code composed as follows; . . . Chapter 26-18, Theft . . . The crime of theft by receiving stolen property, . . . to repeal conflicting laws; and for other purposes."

The body of the Act includes: "Section 1. The following shall constitute the Criminal Code of Georgia: . . .

"26-1806. Theft by receiving stolen property. (a) A person commits theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control or lending on the security of the property."

The question presented, then, is whether or not the

quoted section 26-1806 contains matter different from what is expressed in the quoted provisions of the title or preamble of this Act. We conclude that it does not, and that the statute is constitutional in this respect.

In doing so, it is noted the title states its purpose is, inter alia, to define the crime of theft. To hold the statute unconstitutional would require us to find that theft by retaining stolen property does not substantially correspond to the crime of theft, and that it neither relates to nor has a natural connection with the crime of theft, is not a general element thereof, and is not germane to the definition of theft. See, *Macon & B. R. Co. v. Gibson,* 85 Ga. 1, 20 (11 SE 442) (1890); *Cady v. Jardine,* 185 Ga. 9 (193 SE 869) (1937); *Williamson v. Housing Authority of Augusta,* 186 Ga. 673, 679 (199 SE 43) (1938); *Fields v. Arnall,* 199 Ga. 491, 495 (34 SE2d 692) (1945); *Carter v. Burson,* 230 Ga. 511, 519 (198 SE2d 151) (1973).

Theft contains many elements. Retaining stolen property is merely one of these elements. In our opinion, it has a natural connection with the general subject matter and is proper and germane to the overall definition of theft or theft by receiving stolen property. It was never intended by the framers of our Constitution that the substance of the entire Act should be set forth in the title. If this were true the title would have to include each detail of the entire Act. In these circumstances it is only necessary that the subject matter in the body of the Act relate to what is expressed in the title and have a natural connection to the main object of the legislation and not in conflict therewith, so as not to be deceiving upon a casual reading of only the heading of the Act. All of the tests are met in this instance.

The cases relied on by the appellant are distinguishable. See *McDuffie v. State,* 87 Ga. 687 (13 SE 596) (1891); *Crabb v. State,* 88 Ga. 584 (15 SE 455) (1891); *Smith v. State,* 161 Ga. 103 (129 SE 766) (1925); *Carsello v. State,* 220 Ga. 90 (137 SE2d 305) (1964). For instance, *Carsello,* supra, attacked Ga. L. 1959, Sec. 18, pp. 34, 35, as being in violation of the referred-to constitutional provision. There the title of the Act prohibited the offering or acceptance of anything of value to influence *"members"* of the executive branch of government, the legislative

branch of government or the judicial branch of government. Whereas, in the body of that Act the prohibition was not restricted to members of those branches of government but sought to include every officer, employee, or person acting for or on behalf of the State of Georgia or any agency thereof. The divided court concluded that the word "members" could not be construed to have such a broad or all-inclusive meaning.

2. The second enumeration of error complains that the trial court committed error in allowing appellant's inculpatory statement to be presented into evidence at trial, he claiming that the statement was made involuntarily, and in violation of the holding in Miranda v. Arizona, 384 U. S. 486 (86 SC 1602).

Prior to actual trial, the court conducted a full scale Jackson v. Denno hearing in which appellant, his co-defendant, and counsel for each participated. Following that hearing, the trial judge concluded that the state had carried the burden of proving that the statements attributed to appellant were freely and voluntarily made and that the Miranda requirements were complied with; thus the statements were admissible.

Immediately upon being arrested in the early afternoon of May 3, 1976, defendant was advised of his full Miranda rights which were read to him from a card carried by one of the arresting officers. He stated that he understood those rights. He was then taken to a detective's trailer which was used as a police office where a second officer again advised him of these same rights, in somewhat similar manner. He again stated he understood those rights, signing a written statement to that effect. No threat, force, or promise was made to defendant to get him to sign the waiver or to make any statement. He first made an exculpatory statement in writing. After that statement was made he requested an attorney and upon being asked if he had an attorney he replied that he did not. Thereupon, the police officer furnished to him the Athens telephone directory, and pointed out the yellow pages under the heading of "Attorneys." The officer also advised him that he would notify an attorney for him but defendant never did ask for any specific attorney, although he looked up one or more numbers. Several

hours then passed and he did not mention wanting a lawyer again. At 9:05 p. m. he was again advised of his Miranda rights in writing, and he signed a written form, introduced in evidence, acknowledging the same and a waiver which said in part as follows: "The above rights have been read [to] [by] me. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me."

After signing the above, he wrote out and signed an incriminating statement, admitting that he stole the vehicle found in his possession, giving details of the theft and how it was accomplished.

Thus defendant, without question, was advised of his rights on three separate occasions, and on two of these occasions he acknowledged receipt of the same and admitted he understood his rights by signing written documents. He contends now, that when he mentioned to the police officer that he wanted a lawyer he could not be interrogated further unless the lawyer was present.

Under the rules laid down in Miranda v. Arizona, supra, if police propose to interrogate an individual they must make known to him that he is entitled to a lawyer and if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the individual's Fifth Amendment privileges so long as they do not question him during that time. If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U. S. 478 (84 SC 1758).

In upholding the voluntariness of an incriminating statement or confession, the totality of the circumstances may be considered even though made in the absence of counsel. *Pierce v. State,* 235 Ga. 237 (219 SE2d 158)

(1975).

Under the circumstances of this case we conclude that the government carried the burden placed on it, and the trial court's decision based on the evidence presented is not erroneous.

3. Enumeration 3 claims that the trial court committed error in denying appellant's motion to suppress evidence illegally obtained through an invalid search warrant, supported by an affidavit, the integrity of which was destroyed by material and intentional misrepresentations of fact.

Appellant relies principally upon the case of United States v. Thomas, 489 F2d 664, 669 (5th Cir. 1973), in which that court held in part: "Affidavits containing misrepresentations are invalid if the error (1) was committed with an intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally, but the erroneous statement is material to the establishment of probable cause for the search."

The affidavit in this case was signed by one police officer, after being prepared by another. On cross examination the affiant denied that he had said to the preparer of the affidavit the following included statements: "(1) that he had checked out information given by the informant on two occasions in the past that had proven to be true, (2) that the informant exhibited a truthful demeanor, and (3) that she was a well respected citizen in good standing." Affiant testified that he was the only officer who went before the magistrate to swear to the validity of the facts stated in the affidavit. Affiant did testify that there were more than two occasions in which information was verified but that they just put two in the affidavit. Affiant also testified that prior to the issuance of the search warrant, he did not know the informant had a criminal record, and therefore, he could not have misrepresented that fact.

With this we conclude that the trial judge correctly held that the discrepancies, if any, in the affidavit were not committed with an intent to deceive the magistrate. Assuming for the sake of argument that the disputed portions were misrepresentations, when they are excised

from the affidavit, and the remaining portions are examined, we find there was sufficient probable cause. See United States v. Thomas, 489 F2d 664, citing Aguilar v. Texas, 378 U. S. 108 (84 SC 1509) (1963). Much of the information furnished in an affidavit of this type may be based on hearsay which is oftentimes void of probative value.

The affidavit shows that the informant was giving first hand information from personal observation which had been substantiated by the independent observation of the police officers. "The fact there is an immaterial factual inaccuracy is not fatal to an otherwise adequate showing of probable cause." *Geiger v. State,* 129 Ga. App. 488, 492 (199 SE2d 861) (1974). Factual inaccuracies that are only of "peripheral relevancy to the showing of probable cause" do not go to the integrity of the affidavit. *Summerville v. State,* 226 Ga. 854, 858 (178 SE2d 162) (1970). We conclude that the trial judge was authorized to deny appellant's motion to suppress.

4. Appellant's Enumeration 4 complains that the trial court committed reversible error by denying appellant's motion for mistrial after the state had elicited testimony from a police officer which improperly placed appellant's character in issue.

The specific circumstances follow: The chief of police when asked by the state's counsel why he made it appear to appellant that his ex-wife, Diane Lee, had been arrested, the chief replied: "She had given us information to the effect that she . . . *felt her life was in danger. . .*" At this point, appellant objected and made his motion for a mistrial. The court overruled and denied the motion outside of the presence of the jury, but upon their return to the jury room he immediately advised them as follows: "Ladies and Gentlemen of the jury, the previous question and answer by the witness relating to what a Mrs. Lee allegedly told the witness had been admitted by the court solely and exclusively for the purpose of explaining the conduct of this witness, if in fact it does explain the conduct of this witness, and not for the truthfulness or accuracy or even whether or not Mrs. Lee made a statement to the witness to that effect. Therefore, you should consider the evidence that has been admitted for

the limited purpose for which it has been admitted and for no other purpose or reason and should not consider the truthfulness or accuracy of the statement or the alleged statement by Mrs. Lee to this witness."

It is extremely doubtful that the testimony placed appellant's character in evidence in any way, but assuming that it did so, any harmful effect was eliminated from the trial by the subsequent charge and direction of the court to the jury regarding the same. *Gordy v. State,* 236 Ga. 723 (225 SE2d 287) (1976). See also *Hudson v. State,* 237 Ga. 443 (228 SE2d 834) (1976).

5. Enumeration 5 complains that the trial court committed error in denying his motion for mistrial after a state witness improperly placed appellant's character in issue by implying that he had committed a previous crime.

This specific evidence was an unresponsive answer coming from a state's witness who after saying he had received a phone call said, "it was Diane saying Sam has stole another truck and she was trying to get hold of . . .." Following appellant's motion for a mistrial, the trial judge excused the jury and upon exploring the matter, admonished the witness about making any gratuitous comments or responses. He then brought the jury in and instructed them as follows: "Ladies and Gentlemen of the jury, the last response of the witness to the question asked by the District Attorney was an improper response, was unresponsive to the question asked and it was an improper question. The court rules it out and instructs the jury to disregard that response. Ladies and Gentlemen of the jury, the witness has been admonished about making gratuitous unwarranted and unresponsive answers to the questions propounded to him prior to your coming back in here, and I admonish him at this time to desist from that practice. You may proceed, Mr. Tyler." Thus, the court immediately instructed the jury to disregard the testimony which had not been elicited by any question propounded in behalf of the state. The instructions were sufficient to correct any harm under these circumstances. *Harrison v. State,* 138 Ga. App. 419 (226 SE2d 480) (1976); *Carrigan v. State,* 206 Ga. 707 (3) (58 SE2d 407) (1950); *Lynch v. State,* 234 Ga. 446 (216 SE2d 307) (1975).

6. Enumeration 6 complains that the trial court committed error in denying appellant the opportunity to introduce into evidence, as evidence offered by the state, testimony of an unavailable witness from a prior proceeding after the state had introduced prior testimony of the same witness.

Previously the state had offered testimony of defendant's wife, who testified at a prior preliminary hearing that she had direct knowledge that appellant had stolen the vehicle in issue. At that time she was divorced from appellant. At the time of trial they had subsequently remarried and she had elected not to testify, being represented in her election by counsel for her husband. Defense counsel requested also to offer in evidence testimony of the same witness, but in a different hearing, one being a preliminary hearing and one being a habeas corpus hearing as state's evidence. The court ruled: "Let the record reflect that there has been no ruling by the court or no implication that that testimony would not be accepted if either you or Mr. Stuler offered it." Defense counsel chose not to offer this evidence as his own because if he did so he would lose the closing argument.

Appellant relies on Code Ann. § 38-314: "The testimony of a witness, since deceased or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it, who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." He relies strongly on the case of *Waller v. State,* 102 Ga. 684 (28 SE 284) (1897) and cites *Wells v. Alderman,* 117 Ga. App. 724 (162 SE2d 18) (1968) and *City Council of Augusta v. Youngblood,* 120 Ga. App. 616 (171 SE2d 766) (1969).

The latter two cases construe Code Ann. § 81A-126 (d) (5) of the Georgia Civil Practice Act, which provides that if part of a deposition be admitted in evidence, the opposing party may require that all or other portions of that same deposition also be admitted. Both *City Council of Augusta* and *Wells,* supra, are confined on their facts to situations where different portions of the same document

(a deposition in one, interrogatories in the other) are sought to be introduced by the opposing party after some portion has already been introduced.

In *Waller,* the defendant sought the court to require the solicitor general to read the entire testimony of the former trial. The court refused but announced to counsel for the accused that he might read the remainder if he saw proper. This Waller's counsel refused to do and he complained of error. This court held there was no error, and the case turned upon the theory that the defendant was entitled to the cross examination privilege to which the accused was entitled to avail himself, but refused to do so.

Here, the accused sought to introduce evidence elicited, not in a former trial of the case, and in fact not in the same proceeding from which the state introduced evidence, but sought to introduce allegedly conflicting testimony from a separate proceeding. The proceeding from which the state introduced direct evidence was testimony offered at the preliminary hearing. The testimony of the same witness, sought to be introduced by defendant, was testimony elicited at a habeas corpus hearing. Neither the record of the preliminary hearing nor the habeas corpus proceedings are before this court, but we assume from the trial judge's ruling that they were separate proceedings. Some of the requirements of Code Ann. § 38-314 are applicable, but not all of them. The witness here is the same and she is now disqualified or inaccessible for cause. The testimony in each instance was given on oath. There the similarity ends. The testimony sought to be introduced by the accused was not in a former trial, and being from a habeas corpus proceeding, it is not likely that it was between the same parties nor involved the same issues as the present trial. There are several reasons that the requirements of the statute should be substantially followed. One is the rule of sequestration of the witnesses, which is an aid to the production of truth both for the defendant and for the state. If the rule is invoked, then the direct testimony and the cross examination of the witnesses at a former trial, should substantially present the truth in a given case. However, where there is a time interval between the cases, the

witness who testified in each, is exposed to all of the frailties of human flesh. While we cannot say what the circumstances were when the witness testified at the habeas corpus proceeding, we do take notice of the fact, that from the time of the preliminary hearing in this case to the time of trial she had changed her position from that of a divorced informant and a state's witness, to the position of being the wife of the accused, invoking her privilege against requiring her to testify for or against her husband. Thus, there is good reason that the rule should not be overly broad.

The trial judge did not deny the defendant the right to introduce the testimony as his own, and in fact specifically pointed this out to the defendant in his ruling. Defendant elected, for reasons of his own, not to do so.

The court has some discretion in determining whether or not the evidence proffered by a party, comes within the rule. *Perkins v. Edwards,* 228 Ga. 470 (186 SE2d 109) (1971). In the present case, no showing was made that the hearing on habeas corpus was between the same parties, nor was it shown that the habeas corpus hearing, and the preliminary hearing, involved the same issues. These requirements not being shown, the trial judge did not abuse his discretion in denying defendant's request that the state be required to introduce the habeas corpus testimony.

7. Enumeration 7 insists that the trial court committed reversible error by charging the jury, with two subsequent recharges, that they could find that appellant knew or should have known that the goods were stolen by a mere showing of circumstances which would excite suspicion in the mind of an ordinary, prudent person.

He complains of the trial court's charge to the jury: "The fact that the person knows or should know that the goods are stolen may be shown by circumstances which would excite suspicion in the mind of an ordinary, prudent person." This particular portion of the charge is taken out of context. The charge is lengthy, and adequate. When the charge is considered as a whole, which the court instructed the jury they must do, the appellant's objection

is without merit. The same can be said of the recharges in this case.

The charge of the court does not fully equate knowledge with suspicion as urged by the appellant. The statute was drawn in the alternative and supports the trial court's charge that allows the jury to find that appellant should have known that the vehicle was stolen when an ordinary, prudent man would have suspected that it was stolen. The jury was entitled to find this proof from circumstances and this court has so held in very early cases, such as *Cobb v. State,* 76 Ga. 664 (1886). The Court of Appeals of this state, which would have entertained the appeal in this case if a constitutional question had not been involved, has approved the standard: "Knowledge may be inferred from circumstances which would excite the suspicions of an ordinarily prudent man." *Shorts v. State,* 137 Ga. App. 314 (223 SE2d 504) (1976); *Hudgins v. State,* 125 Ga. App. 576, 578 (188 SE2d 430) (1972); *Nichols v. State,* 111 Ga. App. 699 (2) (143 SE2d 41) (1965); *Pharr v. State,* 26 Ga. App. 433 (106 SE 306) (1921).

The defendant may not have had a perfect trial but he has had a fair trial, and we do not believe that his conviction, which has the approval of the trial judge, should be reversed by this court.

*Judgment affirmed. All the Justices concur, except Hill, J., who concurs in the judgment only.*

SUBMITTED JUNE 14, 1977 — DECIDED SEPTEMBER 6, 1977 — REHEARING DENIED SEPTEMBER 28, 1977.

*James W. Smith,* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.