## 60404. MURRAY v. THE STATE.

BANKE, Judge.

The appellant and his wife were jointly indicted for possessing 11.3 ounces of marijuana in their home. The wife testified at trial that she had purchased the marijuana without the appellant's knowledge while he was at work and that he could not have known of its existence. The appellant did not take the stand. Both were convicted. The appellant received a recidivist sentence of ten years to serve six, and his wife a sentence of six years to serve two.

Police discovered the contraband after being summoned to the home on a disturbance complaint made against a neighbor. They were ushered into the living room by an unidentified male, whereupon they spotted two plastic "baggies" containing what appeared to be marijuana protruding from a wooden letter holder on the wall. The officers asked the appellant's wife if she would consent to a search of the house, and she refused. Two officers accordingly secured the premises while a third left to obtain a search warrant. When the latter returned with the warrant, he was in the company of four more officers. The appellant had returned home from work in the meantime and was thus present when the search began. The total take was 24 plastic bags containing the 11.3 ounces of marijuana, as well as various marijuana-related paraphernalia, such as rolling

papers and a water pipe, and a bottle of pills believed to be amphetamines but later determined to be caffeine.

The wife's testimony that she had purchased all of the marijuana earlier that same day without her husband's knowledge was qualified in one regard. She stated that she had no prior knowledge of the existence of one bag of marijuana which police testified to having found in the couple's bedroom. Furthermore, she admitted, on being asked whether it was "a common practice for ya'll to smoke marijuana in the house," that they smoked once or twice a week.

In an attempt further to establish the appellant's knowledge that contraband was present in his home, the state presented the testimony of a police officer who had talked with him while he was being booked into jail and to whom he had allegedly remarked, "At least you didn't get my private stash." The appellant had been at the police station for about 15 minutes before he said this. He had been advised of his Miranda rights and had responded that he did not want to make any statement without an attorney present. However, the officer testified that the appellant was nevertheless very talkative and that the two became engaged in an informal conversation. Asked by the court to describe the subject of the conversation, the officer responded, "[A]ll I really talked to him about was the marijuana and, of course, the black capsules. I told him I bet you it is going to be caffeine anyway which it did turn out to be." The appellant's objection to the officer's testimony was overruled following a Jackson v. Denno hearing. *Held:*

1. The United States Supreme Court's decision in Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694), clearly holds that once a defendant expresses a desire for an attorney, the police must cease their interrogation of him until his attorney is present. In the recent case of Rhode Island v. Innis, — U. S. — (100 SC 1682, 64 LE2d 297) (1980), the Court held that the term "interrogation" as used in Miranda "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, supra, 64 LE2d 308.

The defendant in the Innis case had been arrested, unarmed, for the shotgun robbery of a cab driver which had occurred earlier the same night. On being given his Miranda warnings, he stated that he wanted to speak to a lawyer. Subsequently, two officers assigned to transport him to the police station began conversing in his presence about the missing shotgun, expressing to each other a concern that one of the children who attended a nearby school for the handicapped

might find it. At that point, the defendant interrupted and told them to turn the vehicle around so that he could show them where the weapon was located. He was again given the Miranda warnings and this time responded that he understood his rights but that he "wanted to get the gun out of the way because of the kids in the area in the school." He then led police to the shotgun. The Supreme Court ruled that the officers' conversation did not constitute an interrogation because (1) they had not expressly questioned Innis and (2) they had not otherwise subjected him "to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him." 64 LE2d 309.

Applying the Innis standards to the case before us, we find that there was a custodial interrogation. The officer admitted both that he had expressly questioned the appellant during the course of their "informal" conversation and that the subject of the conversation had been the very drugs for which the appellant had been arrested. The state contends, however, that, even if the appellant was interrogated, the Georgia Supreme Court's decision in *Lee v. State,* 239 Ga. 769 (2) (238 SE2d 852) (1977) requires a finding that he waived his right to counsel. We do not agree. As in this case, the defendant in *Lee* indicated that he wanted to talk to an attorney before making any statement. However, Lee subsequently signed a written waiver several hours later, after again being advised of his Miranda rights, wherein he expressly stated that he did not want an attorney present. Only then did he make the incriminating statement which was used against him. The appellant in this case made his incriminating statement during the course of a conversation which began immediately after he had invoked his right to talk to an attorney, a right which he did not subsequently waive, either in writing or otherwise. The statement was therefore inadmissable.

2. The trial court was correct in overruling the general grounds of the motion for new trial, as there was other evidence from which a rational trier of fact could reasonably have concluded that the appellant was in knowing possession of at least some of the marijuana found in his home. As already indicated, his wife had no explanation for the bag of marijuana found in their bedroom; as to this contraband, the presumption of constructive possession which arises from the appellant's status as the lessee of the premises and the head of the household thus stands unrebutted. See generally *Sheppard v. State,* 138 Ga. App. 597 (4) (226 SE2d 744) (1976). Furthermore, his wife made a statement on cross examination which could be construed as an admission that both of them smoked marijuana in the home on a regular basis, an admission which would have authorized the jury to reject her testimony that the appellant did not

know that there was marijuana in the house. See *McTier v. State,* 153 Ga. App. 551 (1) (265 SE2d 876) (1980).

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

SUBMITTED SEPTEMBER 3, 1980 — DECIDED SEPTEMBER 23, 1980.

*Vicki C. Affleck,* for appellant.
*Harry N. Gordon, District Attorney,* for appellee.